Bienbenito FERNANDEZ, Petitioner,

v.

Arthur A. LEONARDO, Respondent.

No. CV–88–2910.

United States District Court,
E.D. New York.

July 12, 1990.

Bienbenito Fernandez, pro se.

Annette Cohen, Asst. Dist. Atty., Kew Gardens, N.Y., for respondent.

## MEMORANDUM AND ORDER

GLASSER, District Judge:

This is a petition for a writ of habeas corpus brought pursuant to 28 U.S.C. § 2254. For the reasons set forth below, the court grants the petition in its entirety.

## PROCEDURAL BACKGROUND

Petitioner was convicted following a jury trial of murder in the second degree, attempted robbery in the first degree, and criminal use of a firearm in the second degree. On May 21, 1982, petitioner was sentenced to concurrent indeterminate terms of imprisonment from twenty-five years to life for his conviction of felony murder, and from seven and one-half to fifteen years for each of his attempted robbery and criminal use of a firearm convictions.

Petitioner appealed the judgment to the Supreme Court of the State of New York, Appellate Division, Second Department which unanimously affirmed the judgment. *People v. Fernandez*, 121 A.D.2d 562, 503 N.Y.S.2d 612 (2d Dept.1986). Relying on *People v. Cruz*, 66 N.Y.2d 61, 495 N.Y.S.2d 14, 485 N.E.2d 221 (1985), later reversed and remanded by the Supreme Court, the Appellate Division stated that the "defendant's contention that the refusal of the trial court to grant his motion for severance resulted in the denial of his right to confrontation and a fair trial, pursuant to the rule of *Bruton v. United States*, 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968), is without merit, since the codefendant's statement interlocked with the defendant's confession, and the jury was given appropriate limiting instructions."

Petitioner, appealed to the Court of Appeals asserting that the admission of the nontestifying codefendant's confession constituted reversible error. *Cruz v. New York*, 481 U.S. 186, 107 S.Ct. 1714, 95 L.Ed.2d 162 (1986). However, the Court of Appeals affirmed the judgment of the trial court on the grounds that petitioner's claim "was not preserved for our review", barred under the contemporaneous objection rule of CPL § 470.05[2]. *People v. Fernandez*, 72 N.Y.2d 827, 530 N.Y.S.2d 547, 526 N.E.2d 38 (1988).

## GROUND FOR RELIEF

Petitioner claims that the admission into evidence of the statement of his nontestifying codefendant was a violation of his Sixth Amendment right of confrontation and a fair trial under *Bruton v. United States*, 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968).

## FACTS

On November 19, 1980, Rosa Acosta went to visit a friend, Omar Martinez, who had been in a car accident. At approximately 12:30 a.m., on November 20, 1980, Luis Martinez, Omar's cousin, offered to drive Acosta and her friends home. After dropping off the friends, Martinez drove Acosta to her house on 99th Street in Corona, Queens. As they were saying goodnight, two men, one of whom was carrying a gun, approached the car. According to Acosta, both men repeatedly demanded in English and Spanish, "Ten dollars or your life."

Acosta responded that they had no money. However, she believed she recognized the men from the neighborhood, and offered her watch to them. The man with the gun began to take the watch but suddenly slammed her hand down, stepped back, and fired two or three shots into the car. Martinez was taken to the hospital where he died on the operating table.

On April 7, 1981, Detective Howard Nordstrum arrested petitioner Bienbenito Fernandez in connection with the November 19, 1980 shooting death of Luis Martinez.

With Detective Ray Diaz acting as interpreter, Nordstrum informed petitioner that he had been identified as a suspect in Martinez's death, and advised him of his constitutional rights. Petitioner responded that he understood his rights and was willing to answer questions. Petitioner confessed that he had shot the deceased in order to buy liquor, and that he had consumed a bottle and a half of liquor and had smoked a bag of marijuana on the day of the homi-

cide. Petitioner confessed that he had used a .45 caliber handgun. He stated that a second man had been with him the night of the shooting but petitioner would not provide police with his name, claiming that this individual was not involved.

One month after petitioner's arrest, codefendant Expedito Valerio was arrested, and made a statement to Detective Nordstrum with Detective Roy Pena acting as interpreter. Valerio was advised of his constitutional rights and, after indicating that he understood them, made a statement to police regarding the night of the homicide. Valerio stated that, at approximately midnight on November 19, 1980, he and petitioner were walking along 99th Street in Corona, Queens. He said that he saw petitioner approach a car, demand ten dollars, point a gun in the car and fire two shots. Valerio maintained that this was the last time that he saw petitioner. A tape recording was made of Valerio's statement and played for the jury at trial.

In addition, at a sidebar conference during the trial, Detective Nordstrum testified that the defendant told him "Let this female come forward and I will have to say this female sent me to do it. I do not know her name, but she will get locked up with me." This evidence was to be introduced by the codefendant in support of his theory that the homicide was motivated by revenge.

On April 12, 1982, the eve of trial, the court granted the State's motion to consolidate the cases of petitioner and his codefendant.[1] Defense counsel made no objection to this motion.

Immediately following opening statements, defense counsel for petitioner and codefendant, claiming an irreconcilable difference in their approaches to the defense, moved for severance. The trial court, failing to perceive any undue prejudice in the consolidation, denied the motion.

A second motion to sever was made during codefendant's cross-examination of Detective Nordstrum on the grounds that petitioner's and codefendant's defenses were

antagonistic. The codefendant sought to prove that the motive for the murder was revenge, whereas the petitioner sought to prove that the murder was motivated by robbery. The court denied this motion holding that the codefendant had a right to present his defense and that the presentation of his defense was no reason to grant a severance at that time.

A third motion to sever was made after conclusion of the closing arguments. That motion was based on the antagonistic nature of the defenses and the fear that the jury would improperly consider the codefendant's confession against the petitioner despite the trial court's limiting instructions. The trial court denied this motion claiming that it had taken all necessary steps to protect the interests of the petitioner and codefendant by its limiting instructions to the jury.

## DISCUSSION

### I. Procedural Bar

The Confrontation Clause of the Sixth Amendment provides that "[i]n all criminal prosecutions, the accused shall enjoy the right ... to be confronted with the witnesses against him ..." U.S. Const. amend. VI. The right to compulsory process was applied to the states, through the due process clause of the Fourteenth Amendment. *See Washington v. Texas*, 388 U.S. 14, 18–19, 87 S.Ct. 1920, 1922–23, 18 L.Ed.2d 1019 (1967).

Where defendants are tried jointly, a confession of a codefendant implicating a defendant may not be introduced at trial unless the defendant is permitted to cross-examine the confessing codefendant. *Cruz v. New York*, 481 U.S. 186, 189–90, 107 S.Ct. 1714, 1717, 95 L.Ed.2d 162 (1986). Petitioner claims that the Confrontation Clause bars the admission at his joint trial of the incriminating statement of his nontestifying codefendant, even if the jury is instructed not to consider that statement against him, and even if his own confession

---

1. Until the eve of trial, petitioner and co-defendant were to have had separate trials. They had been indicted separately and had had separate *Huntley* hearings.

is admitted against him. *Id.* at 189–90, 107 S.Ct. at 1717.

Before addressing the merits of petitioner's claim, this court must determine whether this petition for a writ of habeas corpus is properly before this court. The State argues that Fernandez, by not objecting before trial to consolidation of the cases or to the introduction of the nontestifying codefendant's statement, forfeited any claim based on the admission of this statement as a matter of New York criminal procedure law. It is the State's position that under *Wainwright v. Sykes*, 433 U.S. 72, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977), Fernandez may not be permitted to present this claim as a ground for federal habeas corpus relief.

In *Wainwright v. Sykes, supra,* the Court discussed the availability of federal habeas corpus to review a petitioner's constitutional claim, where the state courts have previously refused to consider the claim on the merits because of noncompliance with a state contemporaneous-objection rule. *Id.* at 74, 97 S.Ct. at 2499. In that case, the Supreme Court set forth the "cause and prejudice" test, which bars federal habeas corpus relief under these circumstances "absent a showing of cause for the noncompliance and some showing of actual prejudice resulting from the alleged constitutional violation." *Id.* at 84, 97 S.Ct. at 2505.

The Court stated that principles of federalism and respect for state determinations as well as the need for finality in criminal litigation counsel for adherence to state procedural rules.

We believe the adoption of the *Francis* rule in this situation will have the salutary effect of making the state trial on the merits the "main event," so to speak, rather than a "tryout on the road" for what will later be the determinative federal habeas hearing. There is nothing in the Constitution or in the language of § 2254 which requires that the state trial on the issue of guilt or innocence be devoted largely to the testimony of fact witnesses directed to the elements of the state crime, while only later will there occur in a federal habeas hearing a full airing of the federal constitutional claims which were not raised in the state proceedings.

*Id.* at 90, 97 S.Ct. at 2508.

Thus, pursuant to *Wainwright v. Sykes,* this court must make two distinct determinations with respect to the argument that petitioner's federal constitutional claim is barred from consideration because of his forfeiture of that claim as a matter of state law. First, this court must determine whether the relevant New York state criminal procedural law was validly applied to bar petitioner's habeas corpus petition. Second, assuming that the state court held that the petitioner was precluded, by virtue of a procedural default, from presenting his federal constitutional claim in state court, this court must consider whether there was adequate cause for the petitioner's default and sufficient prejudice to satisfy the *Wainwright v. Sykes* standard.

In this case, we hold that a procedural default has occurred as a matter of New York law, thus triggering the "cause and prejudice" analysis pursuant to *Wainwright v. Sykes,* 433 U.S. 72, 97 S.Ct. 2497, 53 L.Ed.2d 594.

## A. New York State Criminal Procedural Law

■ Petitioner contends that the trial court erred in admitting into evidence at their joint trial his nontestifying codefendant's inculpatory statement. This court must determine whether that issue has been validly preserved for review, or rather, barred as untimely under New York state procedural law.

A question of law is preserved for appeal in New York only when the party claiming error protests at the time of the ruling or at a later time when the court is able to change the ruling. N.Y.Crim.Proc.Law § 470.05(2) provides in pertinent part:

For purposes of appeal, a question of law with respect to a ruling or instruction of a criminal court during a trial or proceeding is presented when a protest thereto was registered, by the party claiming error, at the time of such ruling or in-

struction or at any subsequent time when the court had an opportunity of effectively changing the same.

The admission of codefendant Valerio's taped statement was admitted into evidence during the direct examination of Detective Pena, the translator during the questioning of Valerio, as follows:

> MR. KIRSCH: At this time, Your Honor, I would offer this tape as People's 6 for identification.
>
> THE COURT: All right.
>
> .    .    .    .    .
>
> QUESTION [District Attorney Kirsch]: Detective, have you ever listened to this tape?
>
> ANSWER [Detective Pena]: Yes, sir, I have.
>
> Q: And is this tape a true and accurate account of what occurred in that conversation between yourself, Detective Nordstrom, the ADA, and defendant Valerio at the time in question?
>
> A: To the best of my recollection, yes.
>
> MR. KIRSCH: At this time, Your Honor, I would offer this tape-recording into evidence.
>
> MR. SIMON [counsel for codefendant Valerio]: No objection.
>
> THE COURT: Let it be received as People's 6 in evidence.

Trial Transcript ("Tr.") at 118–19.

At a sidebar, the attorneys and judge discussed the playback of the tape. Petitioner's counsel failed to object to the playback of the taped statement for the jury and, when the judge appeared dubious as to the quality of the tape recorder, said, "Why don't we try and see if there's a problem." (Tr. at 121).

Based on the above, this court holds that petitioner failed to object to the admission of the taped statement at the time of the ruling. Moreover, as the tape was immediately thereafter played for the jury, there was no "subsequent time when the court had an opportunity of effectively changing the same." Petitioner, thus, committed a procedural default at trial by failing to make a contemporaneous objection to the trial judge's admission into evidence of the nontestifying codefendant's statement.[2] *See* N.Y.Crim.Proc.Law § 470.05(2).

In addition, petitioner contends that the trial court's failure to grant his motions to sever the joint trial of petitioner and his codefendant deprived him of his Fourteenth Amendment right to a fair trial. New York criminal procedure law provides that all pre-trial motions be served or filed within forty-five days after arraignment and before commencement of trial. N.Y. Crim.Proc.Law § 255.20(1). It is uncontested that petitioner failed to make a motion to sever before commencement of the joint trial. Petitioner's failure to make a timely motion to sever contravened New York state law.

Thus, we hold that the New York state courts properly invoked the state procedural rule of contemporaneous objection to preclude review of Fernandez's federal constitutional challenge. Accordingly, Fernandez has, for the purposes of federal habeas corpus review, waived that claim unless it fits under the "cause-and-prejudice" exception. To determine whether this court is permitted to review the constitutional sufficiency of petitioner's claim, we therefore proceed to a cause and prejudice analysis.

### B. Cause-and-Prejudice Test

#### 1. *Cause*

In *Wainwright v. Sykes,* the Court held that a federal habeas petitioner who has failed to comply with a state's contemporaneous-objection rule at trial must show cause for the procedural default and prejudice attributable to it in order to obtain review of the defaulted constitutional claim. 433 U.S. at 87, 97 S.Ct. at 2506. *See also Reed v. Ross,* 468 U.S. 1, 11, 104 S.Ct. 2901, 2907, 82 L.Ed.2d 1 (1983) ("[w]hen a procedural default bars litigation of a constitutional claim in state court, a state prisoner may not obtain federal habeas corpus relief absent a showing of "cause and actual prejudice"); *Engle v.*

---

**2.** Further, the Court of Appeals states in its brief opinion that it would not reach the merits of petitioner's constitutional claim, invoking New York's contemporaneous-objection rule.

*Isaac,* 456 U.S. 107, 129, 102 S.Ct. 1558, 1572, 71 L.Ed.2d 783 (1981) ("We reaffirm, therefore, that any prisoner bringing a constitutional claim to the federal courthouse after a state procedural default must demonstrate cause and actual prejudice before obtaining relief"); *United States v. Frady,* 456 U.S. 152, 167, 102 S.Ct. 1584, 1594, 71 L.Ed.2d 816 (1981); *Francis v. Henderson,* 425 U.S. 536, 96 S.Ct. 1708, 48 L.Ed.2d 149 (1976); *Davis v. United States,* 411 U.S. 233, 93 S.Ct. 1577, 36 L.Ed.2d 216 (1973); *Murray v. Carrier,* 477 U.S. 478, 496–97, 106 S.Ct. 2639, 2649–50, 91 L.Ed.2d 397 (1985) ("The cause and prejudice test ... is, we think, a sound and workable means of channeling the discretion of federal habeas courts.").

The Supreme Court clearly stated that default of a constitutional claim pursuant to a trial strategy or tactical decision does not constitute cause. *See Reed v. Ross,* 468 U.S. 1, 13, 104 S.Ct. 2901, 2908–09, 82 L.Ed.2d 1 (1984)[3]; *Smith v. Murray,* 477 U.S. 527, 534, 106 S.Ct. 2661, 2666, 91 L.Ed.2d 434 (1985) ("Our cases, however, leave no doubt that a deliberate, tactical decision not to pursue a particular claim is the very antithesis of the kind of circumstance that would warrant excusing a defendant's failure to adhere to a State's legitimate rules for the fair and orderly disposition of criminal cases."). However, the Supreme Court left open "for resolution in future decisions the precise definition of the 'cause-and-prejudice' standard." *Wainwright v. Sykes, supra,* 433 U.S. at 87, 97 S.Ct. at 2507.

In *Murray v. Carrier,* 477 U.S. 478, 488, 106 S.Ct. 2639, 2645, 91 L.Ed.2d 397 (1985), the Court held that the existence of cause for a procedural default "must ordinarily turn on whether the prisoner can show that some objective factor external to the defense impeded counsel's efforts to comply

with the State's procedural rule." Without attempting to construct an exhaustive listing of objective impediments, the Court noted that "a showing that the factual or legal basis for a claim was not reasonably available to counsel" is an example of such an impediment to compliance with a procedural rule. The Court stated:

We think, then, that the question of cause for a procedural default does not turn on whether counsel erred or on the kind of error counsel may have made. So long as a defendant is represented by counsel whose performance is not constitutionally ineffective under the standard established in *Strickland v. Washington,* [466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984) ] *supra,* we discern no inequity in requiring him to bear the risk of attorney error that results in a procedural default. Instead, we think that the existence of cause for a procedural default must ordinarily turn on whether the prisoner can show that some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule.

*Id.* at 488, 106 S.Ct. at 2645. *See Reed v. Ross,* 468 U.S. 1, 18–20, 104 S.Ct. 2901, 2911–12, 82 L.Ed.2d 1 (1984) (sufficient cause to excuse the procedural default of a claim that shifting the burden of proof to the defendant on the issue of malice violated due process. Claim was 'novel' because 'burden shifting' was not held unconstitutional until several years after the procedural default.); *Dutton v. Brown,* 812 F.2d 593, 596 (10th Cir.) (*en banc*) (cause existed to excuse default when counsel could not reasonably have known that prosecutor's suggestion to jury that ultimate responsibility for death sentence lay with appellate court was unconstitutional because Supreme Court did not determine such ac-

---

**3.** The Court explained in *Reed v. Ross,* 468 U.S. at 14, 104 S.Ct. at 2909:

"[D]efense counsel may not make a tactical decision to forego a procedural opportunity— for instance, to object at trial or to raise an issue on appeal—and then when he discovers that the tactic has been unsuccessful, pursue an alternative strategy in federal court. The encouragement of such conduct by a federal

court on habeas corpus review would not only offend generally accepted principles of comity, but would undermine the accuracy and efficiency of the state judicial systems to the detriment of all concerned. Procedural defaults of this nature are, therefore, inexcusable, and cannot qualify as 'cause' for purposes of federal habeas corpus review."

tion unconstitutional until seven years after trial.) *cert. denied,* 484 U.S. 836, 108 S.Ct. 116, 98 L.Ed.2d 74 (1987).

Petitioner asserts that his failure to object to the admission of codefendant's statement was caused by reliance on an exception to the *Bruton* proscription for "interlocking" confessions[4]. In *Bruton,* 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968), the Supreme Court held that a defendant is deprived of his rights under the Confrontation Clause when his codefendant's incriminating confession is introduced at their joint trial, even if the jury is instructed to consider that confession only against the codefendant. The Court stated:

> "[T]here are some contexts in which the risk that the jury will not, or cannot, follow instructions is so great, and the consequences of failure so vital to the defendant, that the practical and human limitations of the jury system cannot be ignored. Such a context is presented here, where the powerfully incriminating extrajudicial statements of a codefendant, who stands accused side-by-side with the defendant, are deliberately spread before the jury in a joint trial. Not only are the incriminations devastating to the defendant but their credibility is inevitably suspect ..."

391 U.S. at 135–36, 88 S.Ct. at 1627–28 (citations omitted).

However, in *Bruton* the codefendant had confessed that he and the defendant had committed the armed robbery. The defendant himself had made no such statement. In this case, unlike *Bruton,* both the defendant and codefendant have confessed.

In *Parker v. Randolph,* 442 U.S. 62, 99 S.Ct. 2132, 60 L.Ed.2d 713 (1979), the Court considered the question of whether *Bruton* applied to a codefendant's confession, corroborating that of the defendant, if introduced against him. In *Parker, supra,* a plurality of four Justices found no violation of the right of confrontation where the confessions of the defendant and the code-

fendant were so similar as to "interlock". The *Parker* plurality held that the interlocking nature of the two confessions served to mitigate the effect of the codefendant's confession. It interpreted *Bruton* to apply only in cases where the admission of a codefendant's incriminating confession was "devastating" to the defendant's case. If the codefendant's incriminating statement did not differ in any substantial aspect from that of the defendant's confession, the statement was considered harmless and thus, admissible against the defendant.

The Court was not to revisit this issue until 1987, five years after petitioner's trial. *See Cruz v. New York,* 481 U.S. 186, 107 S.Ct. 1714, 95 L.Ed.2d 162 (1987). In *Cruz, supra,* the Court reaffirmed the ruling in *Bruton* that "where two or more defendants are tried jointly ... the pretrial confession of one of them that implicates the others is not admissible against the others unless the confessing defendant waives his Fifth Amendment rights so as to permit cross-examination." 481 U.S. at 190, 107 S.Ct. at 1717.

The *Cruz* Court rejected the *Parker* plurality's concept of "interlocking" confessions as an exception to the *Bruton* rule. It stated that the interlocking nature of the confessions renders the defendant's confession more harmful. The Court recognized that the introduction of the defendant's own interlocking confession might, in some cases, render the violation of the Confrontation Clause harmless, "but could not cause introduction of the nontestifying codefendant's confession not to constitute a violation." 481 U.S. at 191, 107 S.Ct. at 1718 *citing Parker, supra,* 442 U.S. at 77–80, 99 S.Ct. at 1718. The Court stated:

> In fact, it seems to us that "interlocking" bears a positively inverse relationship to devastation. A codefendant's confession will be relatively harmless if the incriminating story it tells is different from that which the defendant himself is alleged to have told, but enormously damaging if it

---

**4.** Two statements have an "interlocking" character if they do not differ in any significant aspect as to facts including, the time and place of the crime and defendant's participation in the crime.

confirms, in all essential respects, the defendant's alleged confession. It might be otherwise if the defendant were *standing by* his confession, in which case it could be said that the codefendant's confession does no more than support the defendant's very own case. But in the real world of criminal litigation, the defendant is seeking to *avoid* his confession—on the ground that it was not accurately reported, or that it was not really true when made.

*Id.* at 192, 107 S.Ct. at 1718.

The Court in *United States v. Johnson,* 457 U.S. 537, 102 S.Ct. 2579, 73 L.Ed.2d 202 (1982), identified three situations in which a "new" constitutional rule, representing a 'clear break with the past' would constitute cause, excusing an attorney's failure to raise an issue at a given time. The Court outlined the following situations:

(1) A decision of the Court which explicitly overruled a precedent of the Court;

(2) A decision which would overturn a longstanding and widespread practice to which the Court had not spoken, but which a near-unanimous body of lower court authority had expressly approved; and

(3) A decision which disapproved of a practice that the Court arguably had sanctioned in prior cases.

In *Reed v. Ross* 468 U.S. 1, 17, 104 S.Ct. 2901, 2910, 82 L.Ed.2d 1 (1983), the Court affirmed a decision holding that Ross' claim was sufficiently novel in 1969 so as to excuse his attorney's failure to raise the issue earlier and such a new constitutional claim constituted cause within the meaning of *Wainwright v. Sykes.* The Court stated that "whether an attorney had a reasonable basis for pressing a claim challenging a practice that this Court has arguably sanctioned depends on how direct his Court's sanction of the prevailing practice had been, how well entrenched the practice was in the relevant jurisdiction at the time of defense counsel's failure to challenge it, and how strong the available support is from sources opposing the prevailing practice." *Reed v. Ross, supra,* at 17, 104 S.Ct. at 2911.

In *Cruz,* the Court resolved the issue of the applicability of *Bruton* to interlocking confessions which it had considered in *Parker.* The Court disapproved of the *Parker* plurality's determination and reversed and remanded the New York court's decision. It was not until 1987, when the Supreme Court decided *Cruz,* that it clarified its position with regard to the admissibility of a nontestifying codefendant's statement when there are interlocking confessions.

Consequently, we hold that the failure of petitioner's attorney to have pressed an objection to the introduction of codefendant's statement is sufficiently excusable to satisfy the cause requirement under *Wainwright v. Sykes.*

### 2. *Prejudice*

The showing of prejudice required under *Wainwright v. Sykes* is actual and substantial disadvantage. *Engle v. Isaac,* 456 U.S. 107, 135, 102 S.Ct. 1558, 1575, 71 L.Ed.2d 783 (1981). Petitioner has the burden to show "not merely that the errors at ... trial created a *possibility* of prejudice, but that they worked to his *actual* and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." *United States v. Frady,* 456 U.S. 152, 170, 102 S.Ct. 1584, 1596, 71 L.Ed.2d 816 (1981).

In this case, there is evidence of actual and substantial disadvantage. Petitioner's defense that he was misidentified and his confession was coerced is undermined by the admission of his codefendant's inculpatory statement. The reliability of petitioner's alleged confession is confirmed by codefendant's statement which corroborates the essential facts of the case including the time and place of the crime as well as petitioner's participation in the crime.

The actual prejudice suffered in this case is similar to that involved in *Cruz.* Here, as in *Cruz,* the eyewitness testimony was the only direct evidence that linked the defendant to the crime.

Petitioner effectively raises doubts regarding the credibility of the eyewitness testimony to suggest that the State had less than overwhelming proof. Rosa Acos-

ta identified petitioner inconsistently before and at trial. Immediately after the crime, Acosta described the gunman as taller and 10 pounds lighter than his accomplice. But at the trial, she changed her testimony and said that the accomplice was the taller and thinner of the two. She initially reported to have seen petitioner in the neighborhood 10–20 times, but at trial changed her testimony to having seen petitioner previously on 150 occasions. In addition, Acosta described the gunman as having a crew cut, though it was later established that she had not seen his hair at the time of the shooting.

It appears evident that the codefendant's statement was introduced into evidence for the purpose of corroborating Acosta's testimony. The codefendant's statement did not inculpate him, instead it completely exonerated him at petitioner's expense.

The codefendant's statement worked to the actual and substantial disadvantage of petitioner in that it undermined his defense, corroborated the eyewitness testimony against him and contributed to his conviction. The nontestifying codefendant's statement was not harmless beyond a reasonable doubt. *See Chapman v. California,* 386 U.S. 18, 24, 87 S.Ct. 824, 828, 17 L.Ed.2d 705 (1966); *Harrington v. California,* 395 U.S. 250, 89 S.Ct. 1726, 23 L.Ed.2d 284 (1969) (harmlessness stems from the fact that other evidence in case is so inculpatory that even absent codefendant's confession, defendant would clearly be convicted.); *Delaware v. Van Arsdall,* 475 U.S. 673, 106 S.Ct. 1431, 89 L.Ed.2d 674 (1986). In this case, even assuming the damaging potential of the improperly prohibited cross-examination was fully realized, the error would not have been harmless beyond a reasonable doubt.

Furthermore, in this case, there is a risk of a fundamental miscarriage of justice. A showing of pervasive, actual prejudice constitutes a showing that the petitioner was denied fundamental fairness at trial. *See Murray v. Carrier,* 477 U.S. 478, 494, 106

S.Ct. 2639, 2648, 91 L.Ed.2d 397 (1985). The admission into evidence at their joint trial of the nontestifying codefendant's confession, which exonerated the codefendant and implicated the petitioner, was sufficient to infect petitioner's entire trial with error of constitutional dimensions.

## II. The Retroactivity of *Cruz*

■ The retroactive application of new rulings[5] to convictions which are challenged by a petition for a writ of habeas corpus are generally disfavored. *See Teague v. Lane,* 489 U.S. 288, 109 S.Ct. 1060, 103 L.Ed.2d 334 (1989). In *Teague, supra,* the Supreme Court held that a new rule of constitutional law established after a petitioner's conviction has become final may not be used to attack the conviction on federal habeas corpus unless the rule (1) places an entire category of primary conduct beyond the reach of criminal law, or prohibits imposition of a certain type of punishment for a class of defendants because of their status or offense, or (2) applies a new watershed rule of criminal procedure that enhances accuracy and is necessary to the fundamental fairness of the criminal proceeding. *See Sawyer v. Smith,* — U.S. —, 110 S.Ct. 2822, 111 L.Ed.2d 193 (1990) (new rule of constitutional law which prohibits prosecutorial argument during penalty phase of capital trial that diminishes jury's sense of responsibility for sentencing decision as violation of Eighth Amendment is not to be applied retroactively on federal habeas review because it was not watershed rule of criminal procedure necessary to fundamental fairness of criminal proceeding within meaning of exception to *Teague's* doctrine of non-retroactivity.).

Here, petitioner's claim falls squarely within the second *Teague* exception. In this case, unlike that it in *Sawyer v. Smith, supra,* the rule at issue not only improves accuracy, but also "alter[s] our understanding of the bedrock procedural elements" essential to the fairness of a proceeding. *Teague,* 489 U.S. at 311, 109 S.Ct.

---

**5.** In *Teague v. Lane,* 489 U.S. 288, 301, 109 S.Ct. 1060, 1070, 103 L.Ed.2d 334 (1989) "new rulings" are defined as rulings that were not "dictated by precedent existing at the time the defendant's conviction became final."

at 1076. The new ruling regarding the Confrontation Clause articulated in *Cruz* satisfies not only the first, but the second, half of the definition of the second *Teague* exception, i.e., it goes to the issue of fundamental fairness. The Supreme Court has stated that "[t]here are few subjects, perhaps, upon which this Court and other courts have been more nearly unanimous than in their expressions of belief that the right of confrontation and cross-examination is an essential and fundamental requirement for the kind of fair trial which is this country's constitutional goal." *Pointer v. Texas*, 380 U.S. 400, 405, 85 S.Ct. 1065, 1068, 13 L.Ed.2d 923 (1965). *See also Barber v. Page*, 390 U.S. 719, 721, 88 S.Ct. 1318, 1320, 20 L.Ed.2d 255 (1967); *Douglas v. Alabama*, 380 U.S. 415, 85 S.Ct. 1074, 13 L.Ed.2d 934 (1965); *Mattox v. United States*, 156 U.S. 237, 242–43, 15 S.Ct. 337, 339–40, 39 L.Ed. 409 (1895). The introduction of the nontestifying codefendant's statement against the petitioner rendered his joint trial "fundamentally unfair". Thus, the ruling in *Cruz* may be applied retroactively in this habeas corpus proceeding as it comes within the second *Teague* exception.

In addition, the Court has applied new rulings to final convictions where the rulings would have "a fundamental impact on the integrity of factfinding." *Allen v. Hardy*, 478 U.S. 255, 259, 106 S.Ct. 2878, 2880, 92 L.Ed.2d 199 (1986); *see also Stovall v. Denno*, 388 U.S. 293, 298, 87 S.Ct. 1967, 1970, 18 L.Ed.2d 1199 (1967); *Jackson v. Denno*, 378 U.S. 368, 84 S.Ct. 1774, 12 L.Ed.2d 908 (1963); *Gideon v. Wainwright*, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963); *Reck v. Pate*, 367 U.S. 433, 81 S.Ct. 1541, 6 L.Ed.2d 948 (1960); *Linkletter v. Walker*, 381 U.S. 618, 639, n. 20, 85 S.Ct. 1731, 1743, n. 20, 14 L.Ed.2d 601 (1965); *Johnson v. New Jersey*, 384 U.S. 719, 727–728, 86 S.Ct. 1772, 16 L.Ed.2d 882 (1966); *Brookhart v. Janis*, 384 U.S. 1, 86 S.Ct. 1245, 16 L.Ed.2d 314 (1966).

In *Roberts v. Russell*, 392 U.S. 293, 294, 88 S.Ct. 1921, 1922, 20 L.Ed.2d 1100 (1968), the Supreme Court held that *Bruton* was to be applied retroactively to cases on collateral review because the constitutional error at stake in *Bruton* "presents a serious risk that the issue of guilt or innocence may not have been reliably determined." *Roberts*, 392 U.S. at 295, 88 S.Ct. at 1922. The Court stated:

> Despite the cautionary instruction, the admission of a defendant's confession which implicates a codefendant results is such a "serious flaw." The retroactivity of the holding in *Bruton* is therefore required; the error "went to the basis of fair hearing and trial because the procedural apparatus never assured the [petitioner] a fair determination" of his guilt or innocence. *Linkletter v. Walker*, 381 U.S. 618, 639 n. 20, 85 S.Ct. 1731, n. 20, 14 L.Ed.2d 601 (1965).

*Id.* at 294, 88 S.Ct. at 1922.

The Supreme Court has also applied *Cruz* retroactively. In *Sanders v. Lane*, 481 U.S. 1026, 107 S.Ct. 1950, 95 L.Ed.2d 523 (1987), the Court vacated the judgment of the Seventh Circuit which had affirmed the denial of a petition for a writ of habeas corpus on the ground that the state trial court had improperly admitted an incriminating statement of a codefendant at petitioner's joint trial. The case was remanded to the district court for further consideration in light of *Cruz v. New York*.

In a recent case in this circuit, the district court applied *Cruz* retroactively to a petitioner's collateral attack on his conviction on the basis of a violation of his Sixth Amendment right to confront witnesses against him. In *Reddy v. Coombe*, 730 F.Supp. 556 (S.D.N.Y.1990), the court wrote:

> Thus, whether *Cruz* is taken as doing "no more than reaffirm [Bruton's] central proposition" and as being "indistinguishable from *Bruton* with respect to those factors that the Court has deemed relevant in this area" as it states, *Cruz*, 481 U.S. at 193, 107 S.Ct. at 1719, or as applying the confrontation clause in a way which goes to the basis of a fair hearing and trial, *Roberts*, 392 U.S. at 294, 88 S.Ct. at 1922, it must apply retroactively.

*Id.* at 566.

### III. Harmless Error Test

Since this court is compelled to apply *Cruz* retroactively to this petition for a

writ of habeas corpus, it next must determine whether the present violation of the Confrontation Clause constituted "harmless error" under *Chapman v. California,* 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967). In applying the harmless error rule, "the correct inquiry is whether, assuming that the damaging potential of the cross-examination were fully realized ... [the constitutional restriction upon the scope of cross-examination] was harmless beyond a reasonable doubt." *Olden v. Kentucky,* 488 U.S. 227, 109 S.Ct. 480, 483–84, 102 L.Ed.2d 513 (1988) (quoting *Delaware v. Van Arsdall,* 475 U.S. 673, 684, 106 S.Ct. 1431, 1438, 89 L.Ed.2d 674 (1986)).

The sufficiency of the evidence is irrelevant to our determination whether the admission of the nontestifying codefendant's statement was harmless constitutional error. *See Anderson v. Smith,* 751 F.2d 96, 105 (2d Cir.1984). In *Anderson, supra,* the Court stated:

> The question is not whether there is legally "sufficient evidence [of guilt] on which the accused could have been convicted without the evidence complained of." Indeed, even if a court considers the evidence overwhelming, it should not automatically assume that a constitutional error is harmless. The test rather is simply whether "there is a reasonable possibility that the improperly admitted evidence contributed to the conviction." (citations omitted).

Here, we think there was such a "reasonable possibility." It would be difficult to say that the recorded statement in which codefendant Valerio admitted that he was with petitioner the night of the homicide and that he saw petitioner point a gun in a car, ask for ten dollars and heard two shots, did not contribute to petitioner's conviction for felony murder, attempted robbery and criminal use of a firearm convictions. Though there was eyewitness testimony and the defendant's own confession, it cannot be said beyond a reasonable doubt that the nontestifying codefendant's confession did not contribute to petitioner's conviction.

## CONCLUSION

The rights of confrontation and cross-examination are essential to a fair trial. Under *Cruz,* which applies retroactively to Fernandez's collateral attack on his conviction, the admission of Valerio's statement violated Fernandez's Sixth Amendment right to confront a witness against him and so distorted the truthfinding process as to undermine the fairness of petitioner's joint trial.

Accordingly, because the error was not harmless, the petition for a writ of habeas corpus is granted in its entirety. The State is directed to release the petitioner unless within sixty days from the date of this order the State begins new trial proceedings against him.

SO ORDERED.